Please be seated. Good morning everyone and happy new year. We have a number, oh before we submit the cases I want to welcome Judge Hillman. Judge Wallace and I are very pleased to be sitting with Judge Hillman and to welcome him from the District of Massachusetts. We really appreciate his help and are so pleased to be sitting with him today. Thank you. And we do have a number of cases that are submitted on the briefs today. Thede v. United Airlines 18-15903 is submitted. Beckett v. Bank of America 18-55086 is submitted. Mendoza v. Bank of America 18-55484 is submitted. KY v. Schmidt 18-16350 is submitted. And Everett v. Dry Creek Joint Elementary School 18-16642 is submitted. We have one case on calendar for today which is Canela v. COSTCO 18-16592 and each side will have 15 minutes. Canela v. COSTCO 18-16592 Good morning. Karen Selden on behalf of COSTCO and I'd like to reserve five minutes for rebuttal. This Court should reverse the District Court's summary judgment ruling for two independent reasons. First, Canela fails to show that she has standing to represent the interests of third of any PAGA penalty. Second, under the controlling analysis in Shady Grove, Rule 23 has to apply to a PAGA representative action that is brought by a private plaintiff, just as Rule 23 applies to any other private labor code claim brought on a representative basis. Plaintiff Canela, however, has chosen not to pursue class certification and she argues that these third party interests, that 25% statutory share, is not worthy of protection in federal court and that it's somehow subordinate to the 75% share that goes to the state and that it's subordinate to the state's law enforcement purpose. But never before has this Court endorsed such a wholesale basically disregard of statutory rights that are money in the pockets of these Could you actually first start with whether this should have been removed under CAFA at all? Absolutely, Your Honor. And the answer is yes. This is clearly a CAFA class action as defined in the statute. The statute sets forth a mechanical test, which is, was the complaint filed under a state law similar to Rule 23? And this Court in Louis v. HSBC Bank stated the rule in a more straightforward fashion, which is, quote, whether a complaint seeks class status. That is the analysis. And so if a complaint seeks class status, it's a CAFA class action. So what if you have a complaint where it's very clear there's a typo? Like, it just makes no sense at all to say that something could be a class action. It's like a dispute between someone and their neighbor. And they just have used some boilerplate pleading that they had from another case and accidentally say class action. At that point, can it be removed under CAFA if it has enough in controversy? I'm not aware of a case with a typo situation. And perhaps there's an argument there that you can look behind the pleadings. But every single case that this Court and the U.S. Supreme Court has considered under CAFA, we have consistently rejected the idea that you can pierce the pleadings and look behind them. Well, do you have a case that talks about what to do when the pleading says it's a class action, but it really makes no sense to think of it as a class action? We have the reverse situation in HSBC Bank where the AG filed a complaint in State court and specifically disclaimed it was a class action, even though under State law, that action had to have been asserted as a class action. And this Court said that the allegations of the complaint are controlling. Even if it were true that in State court this were a class action, the fact that they haven't asserted it as such is the end of the analysis. And similarly, in the Supreme Court case in AU Optronics, the Court again specifically said we aren't going to look behind the pleadings. This hasn't been pleaded as a mass action. Even though it looks and feels like one, we're not going to go behind the pleading. We have to look at the pleading. So there is no case where we have the reverse situation. We have a case that is clearly pleaded as a class action and, in fact, could have been brought as a class action even in State court. Can you explain how it could? So I know that there have been. But can you explain what is gained by calling a PAGA action a class action? I don't understand how any recovery would be any different or anything would really be practically different. Well, you would have the protections of a class action. The substantive recovery amounts, you're right, Your Honor, would not change. But you would have the protections of more rigorous settlement supervision. You would have the ability of class members to opt out. You would have perhaps a more defensible position that your class action settlement, if there is one, is fair. So, Your Honor, if a class member opts out, would they still be bound by the judgment, though? I thought in a PAGA action, once there's a judgment for one employee with the same claim, it binds everyone. If they opt out, the scope of the claim narrows. So for that particular class member and their labor code violation and their associated penalty, they could then go on and pursue their own class action. No, but that's not the relief that PAGA gives them. They're bound by being an aggrieved employee. They're bound by the PAGA decision. If you're in state court, and Plaintiff Cannella had stayed in state court, and she had filed this nationwide action, if absent an opt-out, you're absolutely right. Everybody who is in the greeter position in Costco would be bound by that judgment in so far as the PAGA penalties go. But that's if there is no ability to opt out, if it is filed as not a class action, just as your run-of-the-mill in state court, arias, non-class PAGA action. But if we're in Federal court, and if the court accepts that Rule 23 applies, aggrieved employees would be able to opt out, as class members always are. And in that case, we're not talking, for example, about a 21-warehouse PAGA action with 12,000 people. Say it's 10,000 people. Those people would be bound. But I don't understand how that makes any sense, because wouldn't we have to follow California law of preclusion? And why would anyone opt out if they're going to be bound by the judgment anyway? They're better off being – I don't even understand why anyone would do that. They wouldn't be bound by the judgment. If they've opted out, just like in any other labor code class action, if, say, for example, you're seeking wage statement penalties under Section 226, if you opt out of the claim, out of the class, you can feel free to pursue your own wage statement penalties in a different class action. But aren't – isn't that treated differently than PAGA? I thought PAGA had a pretty clear rule that once there's a judgment, it binds everyone. That is the PAGA rule. That is what the statute says. And Arias recognizes that in state court, that's fine. But here, the difference is that in federal court, Costco's position is that Rule 23 has to apply for standing purposes and under Shady Grove. And so if Rule 23 applies, then we have all of the protections that Congress intended to control representative action litigation in federal court. And that includes the ability to opt out. So, yes, you are right in the sense that a PAGA action in federal court would have a different result in terms of the scope of the action and the scope of the judgment than it would in state court. But that's by congressional design. That's because Rule 23 says that if you are representing other people and their concrete interests, you have to allow them the ability – you have to give them notice, you have to give them the ability to opt out, because that is what is considered important in Rule 23. So you are right that it would be different, but that is not a reason to contort Rule 23 and not apply Rule 23. In fact, it's the opposite. PAGA is setting up a different standard than what Rule 23 requires. And under Shady Grove, Rule 23 would have to control. Roberts. Could you tell me what your position is on Bauman? O'Connell. Yes. So Bauman is relevant only to the extent that it says that it is not answering the question here. Bauman specifically said it was not answering whether a PAGA action may be brought as a class action in federal court. Bauman was instead a statutory construction question asking simply whether under CAFA a PAGA is similar enough to Rule 23 to count as a removable class action. And the answer was no, because the PAGA statute itself does not contain Rule 23-like requirements such as commonality, numerosity, et cetera. It's a circular argument that you're making, because your argument for why putting the words class action on the complaint changes it is that that triggers Rule 23, which then makes it different. But if it was in state court, I still don't understand really how it's any different in terms of what could be recovered or the preclusive effect or anything about the difference between a PAGA action and a PAGA class action. Well, because plaintiffs specifically invoked the state class action rule in our case. She didn't just file it as a — But maybe accidentally. I mean, what difference did that make? What was that going to do? I still don't really understand what you thought it was going to do in state court. I think that CAFA precludes us from asking, is a class action allegation material? Is it strategically smart? What does it add to the case? It is a mechanical inquiry. Is this asserted as a class action or not? And the reasons why plaintiffs did it, I'm not sure. Arias didn't require her to do it that way, but she did. And after the claim was removed to federal court, she continued to say for the next four years that she was intending to file a class certification motion. So I can't tell you why they decided to do that, but I can tell you that under CAFA, to say that we need to look behind the pleadings and really inquire as to whether it's material would actually be adding an element to the CAFA statute that's not there. It's just very bizarre because your argument is basically we could remove this because it's a class action, but then now it's not a class action, so now it can't proceed. I mean, there's a real tension, I think. I think the tension is created by the fact that Plaintiff Cannella decided not to pursue class certification. There would be no tension had she decided not to file it as a class action in state court. And there wouldn't have been tension had she, once we were here, decided to pursue it. Instead, she let the class certification deadline lapse, and that's why we're here. The tension was created by the procedural maneuvers in this case, not by anything inherently inapplicable about Rule 23 in this case. And, in fact, as this Court knows, in Brown v. Walmart, this Court actually affirmed certification of a PAGA seating action very similar to this one. So there's nothing inherently inconsistent with applying Rule 23 to PAGA actions. You see the plaintiff as trying to seek class action relief? I'm sorry, Your Honor? You see the plaintiff as trying to seek class action relief? In her complaint, absolutely, because she pleads that the requirements for class certification, like adequacy and commonality, were met. She titled it a class action complaint. And so at the time of removal, as far as Costco was concerned and as far as the District Court was concerned, this was a PAGA class action. And we know that those are allowed in state court because Arias says so, and PAGA actions have been certified. So, yes, as far as everybody was concerned, she was seeking class action relief until four years into this litigation when she decided that she was not. How does she get class action relief? How does the plaintiff get class action relief when all the money belongs to the state? All of the money does not belong to the state. Seventy-five percent goes to the state. She recovers. Seventy-five goes to the state. Twenty-five percent goes to her and the aggrieved employees. And the amount that does go to the state is based on all of the labor code violations committed against these third parties who are in this case because PAGA says that Plaintiff Cannella's action is a private action brought on behalf of other current and former employees, not on behalf of the state. Do you need the state's share to get to the amount in controversy? We do not, because there's two points to that. First, we believe that you can count 100 percent in the amount in controversy. Our case law says otherwise, though, doesn't it? It does not. How do you deal with Urbino, then? Urbino was a traditional diversity case. It was not a CAFA case. And so there was no ability to aggregate. And so there was no way for the individual class member claim to be aggregated with anybody else. So even if you can aggregate the individuals, I mean, Urbino didn't treat you as being able to aggregate the state. I guess I don't see how you get to aggregate the state, even if you can call it a class action. Well, because 100 percent, what the CAFA statute says is that you have to have five million in controversy. And what is in controversy in this action is 100 percent of the penalty.  But that would have been true in Urbino, too, right? The state's share would have been in controversy, but it wasn't. But Urbino was not a CAFA case. Urbino was a traditional diversity case. So there was no ability to aggregate anybody else. Okay, so does your argument for amount of controversy depend on counting the state, though, with this way of counting what you just said? It doesn't, actually, Your Honor, because even at the time of removal, you don't just look at how much had accrued in penalties up to the date of removal. Amount of controversy includes everything that is at stake in the litigation, and that includes future penalties, attorney's fees, lost wages, whatever it is, through the entire sweep of the case. And so even at the date of removal, we were at 5.2 million, and that was seven and a half years ago. And so even at that date, Costco could make the reasonable assumption that this case would go on for three or four years, let alone the six and a half that we already have. So we would far, far exceed the 5 million that was already at controversy, because every pay period that goes by, we are adding more. And so we would easily meet it whether or not you count the 100 or the 25. And I would say, Your Honor, that if the Court is at all interested in this issue, we would request the ability to file supplemental briefing on this, as this was, in the supplemental briefing, the first time that Plaintiff Cannella has ever raised this issue. So we did not anticipate that this is something that we would be arguing. So to the extent the Court would like more information, we would request the ability to do so. I have a question I want to ask you about Section 1332. Under Section 6, it says, in any class action, the claims of the individual class members shall be aggravated to determine whether the matter in controversy exceeds the value of 5 million dollars. Those people, you can't aggravate even the smallest, the 25 percent, and still qualify for a class action, can you? That provision is the aggregation provision. That is a provision that makes clear that, unlike in a traditional diversity case like Urbino, you can aggregate everybody's claims together to reach 5 million. And our view is that the claims of the class members have to include the entire 100 percent of the penalty because the only way the State even gets their to collect 100 percent of the penalty is through this class action, but you can only count 25 percent as being in controversy. But it's specifically what it says. You may agree that you may think the Congress is wrong, but no one has amended it. I don't see, I don't understand your view that the claims have to be of the individual class members. The State is not an individual class member. The people who brought this lawsuit are. Now, how do we, I mean, it says what it says, and it just seems to me it's very difficult to understand your position. Because, again, this is an aggregation provision. The in-controversy provision is a separate one. And what this one says is you get to put everybody's... Oh, this is a requirement. This is the requirement. Statutory. Yes, yes. But we don't view this requirement as narrowing what can be considered in the Then in meeting the amount in controversy, consider attorney's fees. But those don't go into the pockets of class members. That is not a claim of the class member. And yet we are allowed to consider that, and often do consider that, in the amount in controversy. So this provision doesn't mean that the amount in controversy is only what goes into class member's pockets. I have difficulty interpreting that. Do you have a Supreme Court case or any court of appeals case that has said that what you indicate is the valid way to interpret section 1332? We have directly on point to this specific issue, the Diaz case, which is a district court case, that's directly on point to this specific question. But in terms of Ninth Circuit authority, we have the cases like In re Ford Motor Company that talk about amount in controversy being looked at from either viewpoint, from the viewpoint of the defendant or the viewpoint of the plaintiff. So here, from Costco's viewpoint, more than $5 million is in controversy. How does that square that we're talking about the individual class members? Because again, here, the claims of the individual class members are for the only way that the state gets their money is through a private action being brought on behalf of the individual class members. The vehicle is PAGA. So the state, while it's not a class member, the only way it gets its recovery, the only way that amount is in controversy is because of the way this claim has to be litigated. And this is a function of the difficulty we're having is because California has created a very unique statute. And so it — but that, again, cannot modify how we look in Federal court at what is in controversy. And your best case to substantiate that interpretation of Section 1332 is the district court case that you filed. In re Ford Motor Company, which talks about looking at either viewpoint. And again, Your Honor, if you look at actually what was it, we don't need to count 100 percent. We can, even if you were to consider only the 25 percent, given that we are now at $30 million plus in penalties, even if you were only to count 25 percent, we would still satisfy. The claims of the individual class members, that's all of them, all of the individuals. Yes. And we say that that includes the state's portion because there's no other way for the state to obtain their relief. It's only through the claims of the class members. The state is not a party. The state is a class member? No. The only way that the state can obtain their relief is through the claim of the class member. So our view is that the claim of the class member includes the 25 percent share, because otherwise there's no other way for the state to receive their relief. I wouldn't have written the statute this way. So I'm having difficulty with it. Thank you. I understand. I've gone well over my time, so I will, unless you have other questions. No, I think, unless you have any other questions, we'll still give you a minute for rebuttal. Thank you very much. Thank you. And may it please the Court, Michael Rubin for Ms. Cannella. The propriety of removal is measured as of the date of removal. Costco filed its removal petition, and at the time, there was a total of $5.2 million in dispute. But according to Costco's own calculations, only $1.3 million of that would be attributable to aggrieved employees. That is when you measure the amount in controversy. So even if this case had been filed as a class action within the meaning of CAFA, the amount in dispute wasn't sufficient to trigger CAFA jurisdiction. But for the reasons I think the Court was indicating in the reason why is actually the answer to all of the issues raised in this case, which is the nature of a PAGA claim. The California legislature, in enacting PAGA, whether for whatever reason it chose to do so, Judge Wallace, determined that the aggrieved employees don't have due process protected claims. If the bounty share that goes to those aggrieved employees is not an actionable claim that is protected by the due process clause, it makes no difference whether the case proceeds as a class action or not as a class action. Those are immaterial. And where the class action allegations are immaterial, CAFA doesn't apply. There was never subject matter jurisdiction, and this case was improperly removed, which plaintiffs argued in the district court making both points. A, that this is not a class action in any sense given the The district court rejected that argument, but for the reasons we set forth in our supplemental brief, and I think were indicated by some of the questions today, this case should never have been in federal court. And to accept the arguments that Costco is making would necessarily transform the nature of the rights of aggrieved employees to make them something the California legislature never intended them to be. And therefore, if you give aggrieved employees the right to opt out, to intervene, to object to a settlement, to notice, and most importantly, and it didn't come clear until the reply briefing that this was really what was going on in this case, to have any an aggrieved employee could have brought to additional application of res judicata, meaning a resolution of a POGA case would wipe out every labor code claim that an aggrieved employee could have, to construe Rule 23 as so changing the nature of rights would violate the Rules Enabling Act, because it would abridge, modify, or change rights, which a rule can't do. Rule 23 has to accept the rights as they were created. The legislature of California defined these rights. They can be pursued in a representative action. There is no such thing as a class action in the sense that the due process protections that animated Rule 23 kick in. So even if this court had jurisdiction, Coska's arguments would have to be rejected, but it doesn't have jurisdiction. It seems that Arias was acknowledging that some POGA cases had been called class actions, and this one was called the class action. Can you explain why people are calling these cases class actions in state court? Sure, I can. I can't tell you about this case, because I was in counsel below at the time. Arias cites the Amaral case, and I was counsel in Amaral, and I'll tell you exactly what happened, and it's in the record. Amaral involved the City of Hayward's living wage ordinance, and whether the people who worked in a commercial laundry were entitled to the protections, because laundry occasionally came in from the City of Hayward, and it was undifferentiated. No one knew which POGA was enacted under the Hayward living wage ordinance, the Labor Code, and Business and Professions Code 17200. POGA was then enacted, and we amended the complaint. We added an additional cause of action. We didn't think at the time every cause of action was a class action. We added it to the case. The Judge Stephen Brick in Alameda County Superior Court certified the case, included the POGA case. It went up in that basis. There was never any discussion or thought about whether the due process protections would kick in. Because it was certified, there was no dispute over that issue. The Court of Appeal affirmed. The California Supreme Court denied review. The reason we didn't carve it out initially is POGA was a new statute, and no one really knew what a representative action was. We knew what it meant when the state pursued its claims. We thought it was like that. We knew what Perron's Patriai cases were like. We knew what happened in a Business and Professions Code 17200 case when a district attorney pursued it. But I think that a lot of the early cases, until Arias, until Bauman, added class action allegations in order to know what would this procedure look like. No one had any interest or inclination to construe POGA rights as due process protected rights, because they're rights belonging to the state. And from the very beginning, Arias made clear that the aggrieved employees have no due process interests. This Court, in Bauman and Sacab, made clear the aggrieved employees have no due process interest. All of the rights and protections that COSCA was asking this Court to engraft onto POGA rest on the notion that there are due process protections that would give defendants in these cases, not just the plaintiffs, greater rights. In particular, the race judicata right, which would, in effect, wipe out all of the labor code claims upon the resolution of a POGA case. And if you take their arguments to the logical conclusion, every POGA case, whether filed as a class action or not, whether pursued in state or federal court, would necessarily have to comply with class action requirements. Because if COSCA is right, that there is a due process claim owned by each aggrieved employee, then that due process protection is a state court, no less than federal court. So in effect, COSCA is asking for a radical reformulation of the rights and benefits that the California legislature conferred. How do we deal with footnote five in Arias? Footnote five is dictum, because it simply, and it simply describes what I just described. The court noted that sometimes POGA cases are brought as class actions, and they cited that very Amaral case that I had litigated under the Hayward Living Wage Ordinance, but It says they may be brought as class actions. They may be. And in fact, they are. And then the next sentence is the issue here though, is whether they must. And the court reserved the question of whether they, whether, if you bring a POGA case as a class action, that means the due process requirements of protected by Rule 23 kick in. And the answer to that is no, even if, as in the Amaral case or this case, there are class action allegations. That doesn't make it a class action in which the individual class members, of which there are none, have the right to opt out, challenge a settlement, get notice, and have the judgment be raised judicata. So to the extent that the Supreme Court, first, what was just doing is noting as a matter of fact that sometimes that's what happens, but there's no indication in class action with the due process protections that Costco is referring to. And of course, Arias expressly says that POGA does, this is 985 and actually throughout the opinion, does not give rise to due process concerns. The very reason that the California Supreme Court and Arias said that there is no argument that I'm making, it's because the nature of the rights of the degree of employees have are not the sort of rights where you need the class protections of California Code of Procedure 382 in the state court or Rule 23 in the federal court to protect because there's no due process interest. And that's what the California Supreme Court expressly said. And that's what this court in all of its later POGA cases expressly said and was reiterated most recently by the California Supreme Court in October in the ZB Bank case. So because of the nature of the rights, there is no subject matter jurisdiction. There isn't a sufficient amount in controversy. The merits arguments must be rejected. And since counsel started withstanding, let me point to remind the court of Judge Riedland's case in Ohio, which was cited in the employers groups, amicus brief, and the more recent decision last spring in BK versus Snyder, in which Judge Riedland, you were on the panel as well, standing for Article 3 purposes is exclusively a question of whether the individual plaintiff suffered injury has nothing to do with whether she is or can be an adequate representative of some other individual. So there is no standing issue in the case because Costco concedes that Miss Canella had standing. This is only a question of whether Rule 23 applies to confer due process protections that this court in the California Supreme Court said the California legislature in enacting POGA did not create. So to get to the result you're asking for, do we need to say that POGA actions really can't be class actions? And if so, are we needing to contradict the ARIA's footnote? And if so, should we be certifying this question so the California Supreme Court can fix the footnote? No, no. I don't think first the footnote doesn't need fixing because it is it is dictum and it simply says may. It is describing a type of cases where it was unnecessary. Secondly, the this court can decide based on the amount in controversy. It could indicate that there are serious questions raised as to whether POGA cases. There is no question but that the due process protections do not apply to the aggrieved employees. That should be settled and has been by Sakab and Bauman. What that means in terms of whether a POGA case can be adjudicated in conjunction with others as a class action may be a separate question. But for purposes of CAFA, this is not a class action because those allegations are immaterial. They don't affect anyone's rights. If they did affect anyone's rights, then they would be a violation of the Rules Enabling Act. So there's no need to certify. You could decide because the California Supreme Court and this court have have uniformly said they're in a due process protection. So there's nothing to ask the Supreme Court. As long as you have another minute or so and you're slowing down, I'd like to turn your attention back to Section 13326, which I discussed with your adversary. And she made her persuasive argument on how that section should apply in this case. I'd like to have you respond to that. How do you do you see the application of that section differently? And if so, why? I do see application of that section differently. In a CAFA case, the claims of the individual class members can be aggregated to determine whether at the time of removal, more than five million dollars was in dispute. At the time of removal here, even if you treat the aggrieved employees as individual class members, their interests were far less than five million dollars. But our main point is the aggrieved employees aren't even individual class members. They have no... Sorry, Shady Grove talks in terms of Rule 23 being an aggregation of the claims of class members. Here, this court and the California Supreme Court have said the aggrieved employees have no claims. So it's actually a three-part answer to your question. One is it wouldn't come up to five million dollars anyway. Second is the state of California is not an individual class member. So you can't count it's 75 percent. That's what Yocopichio effectively says. In determining whether the CAFA five million dollar threshold has been satisfied, you can only consider class claims and not by any stretch of the imagination does the state have a class claim. Because if it did, then any time the state brought an enforcement action itself, that would have to be a class action. And that's never been the case when the government seeks to protect the rights, the public interest and the rights of others. And third, this isn't a class action at all. So 1332 D6 doesn't even kick in. There's a lot of these cases going around. Have you found a case from the Supreme Court or a court of appeals that identifies your reasoning for the outcome? Sure, sure. What's your best case? For the outcome, this court's decisions in Bauman and Sikob, which hold there are no due process interests that belong to aggrieved employees. In terms of the construction of 1332 D6, this court's decision in Yocopichio, which says you don't count the PAGA, in that case it was PAGA claims, but you don't count non-class claims. And finally, the California Supreme Court decisions ranging from Arias to Iskanian to ZB Bank that say the exact same thing that this court did, which is that there are no due process protected rights at issue. So we have a series of California Supreme Court and Ninth Circuit cases that answer all the questions raised in this appeal. We've chosen as a policy matter to decide some cases by unpublished dispositions, the theory being that if it's stated again and again, we don't have to say it again and so we don't look at those. But I look at them periodically because my colleagues have come to some conclusion. I was interested in this Haveth's case. Pretty strong judges, O'Scanlon, Trott, Bybee. How would you feel? I'm not saying that this is precedential so that we have to follow it, but the reasoning itself is pretty strong. How would you respond if, in fact, that had been published? Your Honor, I'm sorry. I'm not familiar. Could you tell me the name of the case again? It doesn't sound familiar to me. Yes. It's too bad. It's in the case of Haveth's, H-A-V-E-Z, versus Time Warner Cable. I thought maybe you had to – I'm not criticizing because we've told you never to cite them, but – and so it's an unfair question, but I thought if you happen to have it in your mind, I would be interested in your response. Your Honor, if it's convenient and if you could tell me the holding of the case, I'd be glad to address the holding. Or if there's a part of the analysis that you would like me to address, I'd be delighted to do that. I understand. And my colleagues here may think I'm way off the base anyway, so if we need your assistance on this, we'll let you know. Thank you very much. I do appreciate that. Thank you. Thank you. Thank you. Why don't we actually give you two minutes for a rebuttal, because – Thank you, Your Honor. First, I would again urge the Court to allow us to submit supplemental briefing on this amount in controversy issue, because again, we have not briefed it at all. And I would just make the point as well that whether you consider the 25 percent or the 100 percent of the penalty, we still meet the amount in controversy. It's simply incorrect that the clock stops at the time of removal in terms of the penalties owed. You look at the entire scope of the case and what's at stake. So if you, from that lens, we are far in excess of $5 million. Second . . . You have a case that analyzes that, that it continues on. If we have a case that goes on for 10 years, we continue to add the money. You still look at it from the date of removal, and you make your best reasonable assumption of what the value of the case is. So that includes your best reasonable assumption of what attorney's fees would be owed at the end of the case, what lost wages you are continuing to accrue at the end, to the end of the case, what penalties are likely to accrue by the time of judgment. Because what you're really trying to do is value the entire case. Yeah. I'm not familiar with . . . So is this a case that says we do this going all the way through trial or assuming the case settles at some point? Or how does this work? It's . . . So for the best case for this is Chavez. It's a 2018 case by this Court, 888 F3rd 413. And there the issue was, can we count lost wages that accrue after the date of removal in determining the amount in controversy? And the Court said yes, because the relevant inquiry is what is your best reasonable estimate of what this entire case is worth? Or as that Court said, what is at stake in this litigation? That's interesting. I always thought that jurisdiction was at a particular time. And if you don't have jurisdiction, it doesn't go. But what you're saying is we think that this will continue on and we can have those. So that's a new . . . Yes. That's a new concept for me. But I haven't taught Federal jurisdiction now for 40 years, so that might be different. It's not really a new concept, Your Honor, because when you do amount in controversy removal papers, you talk about where your reasonable assumptions are in terms of the violation rates, in terms of what the attorney's fees incurred will be. So it is . . . it's an estimate that you're making at the time of removal. Because, again, the inquiry is what is in controversy. What's in controversy isn't just what occurred until the date of removal. What's in controversy is the entire scope of the case. Are you saying . . . are you relying, then, that the actual people that are involved are going to continue to suffer this, whatever it is, so that as long as the case is going on, that's adding to the amount in controversy? That's correct, because PAGA penalties accrue per pay period, and this is an open-ended case where every single week additional PAGA penalties are added. And that was true from the moment the case was filed. And would that include also . . . assume people are going to join in later? That would . . . yes, it would be, but you don't know, obviously, at the beginning of the case. You are confined by what the allegations of the complaint are. But we don't need to go beyond what's in the complaint. Because based on the complaint, it's a nationwide . . . it's a statewide class action, or was a statewide class action. So we had every . . . we had, at this point, 12,000 people. Yes. That follows that loose understanding of the Supreme Court that it isn't that definite that you can take all sorts of things into consideration. Okay. Thank you. That's helpful. And then, just one other point. I heard counsel talk a lot about how, by applying Rule 23, we're somehow going to be wiping out other claims. But that's simply not true. It's no more true for PAGA than it is for any other labor code claim that's filed in federal court. The point of Rule 23 is you bring together all like claims, and you efficiently and manageably litigate them in one single place. And employees have notice and the ability to opt out. So there's no wiping out of claims. Once they have notice, they are free to decide whether to remain in the case or not. So this idea that Rule 23 is wiping out substantive rights is simply not the case. And the third point I would make is a lot of counsel's arguments seem to depend on the California courts telling this court how to interpret Rule 23 and how to interpret federal standing requirements. And that's just exactly backwards. You start from the proposition under Shady Grove that if Rule 23 and the state rule answer the same question, Rule 23 has to control. And here, they do answer the same question. We know that they do because both PAGA and Rule 23 use the identical on behalf of language. Both statutes authorize actions on behalf of absent individuals. So in federal court, Shady Grove says Rule 23 has to control even if the California state courts don't like that result. They don't get to decide. And the very last point I would make is this idea that this class action, because it's somehow optional in state court, that makes it less of a CAFA class action. And there is no authority for that proposition. There is no authority to say that when somebody voluntarily invokes a class action statute, that this court is free to just ignore that because we don't think strategically that that was a necessary result. So with that, unless the court has any other questions, I'll submit. Thank you. Thank you both sides for the helpful arguments. The case is submitted, and we are adjourned for the day.
judges: Wallace, Friedland, Hillman